```
_____
                                )
TERESE PACENSA,                 )
                                )
          Plaintiff,            )
                                )
          v.                    )  CIVIL ACTION
                                )  NO. 11-10113-WGY
MICHAEL J. ASTRUE,              )
Commissioner of the            )
Social Security Administration, )
                                )
          Defendant.            )
_____ )
```

MEMORANDUM OF DECISION

YOUNG, D.J.                                    March 26, 2012

## I.    INTRODUCTION

The plaintiff, Terese Pacensa ("Pacensa"), brings this

action pursuant to section 205(g) of the Social Security Act, 42

U.S.C. § 405(g), seeking judicial review of the final decision of

the Commissioner of Social Security (the "Commissioner").

Pacensa challenges the decision of the Administrative Law Judge

(the "hearing officer") denying her application for Supplemental

Security Income ("SSI") benefits and Social Security Disability

Insurance ("SSDI") benefits.  She argues that the Commissioner's

decision is not supported by substantial evidence and is based on

errors of law.  See Pl.'s Mot. Reverse Decision Comm'r 1, ECF No.

15.  Pacensa requests that this Court reverse the decision of the

Commissioner. Mem. Supp. Pl.'s Mot. Reverse Decision Comm'r ("Pacensa Mem.") 15, ECF No. 16. The Commissioner filed a motion for an order affirming his decision. Def.'s Mot. Order Affirming Decision Comm'r, ECF No. 19.

### A. Procedural Posture

Pacensa filed for SSI and SSDI benefits on December 8, 2008. Admin. R. 102-15. She alleged a disability onset date of October 15, 2008. <u>Id.</u> at 102, 108. The Commissioner denied both applications on April 1, 2009, <u>id.</u> at 55-60, and upon reconsideration on July 31, 2009, <u>id.</u> at 64-69. On August 7, 2009, Pacensa requested an oral hearing, which took place before a hearing officer on July 13, 2010. <u>Id.</u> at 70-71, 79. The hearing officer concluded that Pacensa was not disabled within the meaning of the Social Security Act, and denied her claim. <u>Id.</u> at 9.

The hearing officer's decision was selected for review by the Decision Review Board (the "Board"). <u>Id.</u> On November, 19, 2010, the Board amended the decision of the hearing officer, assigning "significant" weight to the testimony of non-examining consulting physician Dr. Michael Maliszewski ("Maliszewski"). <u>Id.</u> at 1. The Board, however, upheld the hearing officer's conclusion that Pacensa was not disabled. <u>Id.</u> On January, 18, 2011, Pacensa filed the present action with this Court to review

the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).
See Compl. 1, ECF No. 1.

### B. Factual Background

Pacensa was born on September 3, 1978. E.g., Admin. R. 570.
She received mental health counseling as a child. Id. at 565.
Pacensa was speech delayed and, by age three, prone to aggressive
behavior. Id. At age eleven, she was admitted to New York-
Presbyterian Hospital for three months to undergo evaluation for
aggressive behavior and poor socialization. Id. at 563-64. Upon
discharge, Dr. David Mitnik ("Mitnik") observed that Pacensa's
"affect was slightly constricted with occasionally inappropriate
moments," id. at 566, and recommended a structured or supervised
day treatment program, id. at 569. He further opined that
Pacensa's overall prognosis was "fair." Id. at 569.

The hospital referred Pacensa to a state treatment program
in New York for schooling and she later completed high school in
Massachusetts, partly in special education classes. Id. at 30.
Although Pacensa attempted college, she left two colleges because
of poor grades, disciplinary issues, and termination of her
financial aid. Id. at 42-43. Over the years, Pacensa was
arrested twice for assaulting her grandmother, threatened her
mother with a knife, and was hospitalized for attempted suicide
in 2008. Id. at 34-35.

After withdrawing from college in 2000, Pacensa held several
retail jobs that were terminated following disputes with
supervisors, coworkers, and customers.  Id. at 28, 30-32, 35, 43.
In her longest job, Pacensa was employed for three years as a
cashier at Stop and Shop.  Id. at 28.  She walked off the job
after her request to leave early to attend Ash Wednesday services
was denied.  Id. at 31.  In October 2005, she was fired from her
job as a cashier at Ocean State Jobbers for insubordination and
unauthorized absences.  Id. at 195-201.  On one occasion,
Pacensa's supervisor at Ocean State Jobbers reported that Pacensa
responded aggressively to a helpful attempt to organize her
credit slips.  See id. at 196.  From February 2006 to January
2007, Pacensa was twice employed with Dunkin' Donuts.  Id. at
153; see Pacensa Mem. 3-4.  Pacensa lost her job at Dunkin'
Donuts in 2007 after her supervisor used Pacensa's transfer
request as a ground for termination.  Admin R. 208.  She
previously quit working at a Dunkin' Donuts in 2006 after a
dispute with her coworkers and supervisor.  Id. at 209.  She then
worked briefly for Job Lot, before she was terminated for
refusing to perform her duties.  Id. at 43.  In March 2007,
Pacensa was hired as a cashier at K-Mart.  Id.  She was
terminated in July 2008 following an altercation with her
supervisor.  Id. at 43; see id. at 339.  Finally, in September

2008, Pacensa started a job at CVS.  Id. at 330.  A month later, she was fired after she pushed her supervisor.  Id. at 30.

### 1.    Treating Sources

On December 30, 2005, Pacensa was evaluated by Dr. Gershen Rosenblum ("Rosenblum"), at which time Pacensa reported a history of depression.  Id. at 220-25.  Rosenblum observed that Pacensa was inarticulate during the session and that her affect was inappropriate.  Id. at 224.  Rosenblum diagnosed her with depression, anxiety, borderline personality disorder, and hypothyroidism.  Id.  Pacensa was assigned a Global Assessment of Functioning ("GAF") score of 52.  Id. at 225.  Beginning in January 2006, Pacensa sought treatment at the Duffy Health Center.  Id. at 327-422, 521-54, 750-71.  There, physicians diagnosed her with depression, a personality disorder, and hypothyroidism, and she was assigned a GAF score of 51.  Id. at 328, 331.  With treatment, her physicians observed an improvement in her symptoms, including no suicidal or homicidal ideation. Id. at 340.  Pacensa reported that Prozac helped to alleviate her symptoms.  Id. at 378.  A mental status exam indicated that Pacensa had a depressed mood, but that her cognition, thought process, and concentration was within normal limits.  Id. at 399.

From December 1, 2008 through January 21, 2009, Pacensa pursued therapy with Lorraine Touchette ("Touchette"), a psychologist.  Id. at 482-96.  On January 21, 2009, Touchette

diagnosed Pacensa with depression and bipolar disorder.  Id. at
490.  Touchette noted that Pacensa was taking Prozac and pursuing
therapy.  Id. at 492.  Touchette determined that Pacensa's
prognosis was fair so long as she remained on medication.  Id.

After examining Pacensa in May 2009, Dr. David Callahan
("Callahan"), a clinical psychologist, reported that Pacensa was
"in adequate contact with reality, and that she perceives the
world as others do."  Id. at 800.  Moreover, he noted that
Pacensa has "some vulnerability to feeling a bit overwhelmed,"
but concluded that her issues were mostly "characterologic in . .
. nature."  Id.  On the other hand, Callahan reported that
Pacensa is "vigilant for any sense of rejection" and can be "very
reactive" in response to slights, real or perceived.  Id. at 801.
Callahan stated that although it is difficult for Pacensa to
"sustain stability and consistency over time," her treatment
should focus on "developing better coping skills and an ability
to regulate her rage response."  Id.  Callahan concluded that it
would be challenging for Pacensa to maintain independence, but
that "she does have some talents."  Id.  He stated that the
"challenge" is to "bolster[] her to the point where she can
utilize those talents on a consistent basis and avoid regression
to rage states that undermine her ability to maintain basic
security."  Id.  Callahan diagnosed Pacensa with Borderline
Personality Disorder and Intermittent Explosive Disorder.  Id.

6

Furthermore, in a report dated June 19, 2009, Callahan opined that Pacensa's mental status, daily activities, and adaptive functioning were intact.  Id. at 578.  On the other hand, Callahan noted some attention deficit issues.  Id. Nevertheless, he reported that Pacensa could sustain attention and concentration for extended periods without distraction by psychologically based symptoms and could remember work-like tasks and instructions.  Id.  Finally, Callahan described Pacensa's response to routine stress as "marginal."  Id. at 579.

### 2.  Non-Examining Sources

On March 31, 2009, Dr. Marsha Tracy ("Tracy") completed a mental residual functional capacity assessment and a Psychiatric Review Technique Form based on the record evidence.  Id. at 498-515.  Tracy opined that Pacensa had depression and borderline personality disorder.  Id. at 505, 509.  She further opined that Pacensa was mildly limited in activities of daily living and moderately limited in social functioning and in maintaining concentration, persistence, or pace.  Id. at 512.  Tracy concluded that Pacensa was moderately limited in areas of understanding and memory; sustaining concentration and persistence; and adaptation.  Id. at 498-99.  Moreover, Tracy found that Pacensa was markedly limited in her ability to interact appropriately with the general public.  Id. at 499.

In her narrative assessment, Tracy noted Pacensa's long history of problems with impulsivity and concluded that Pacensa's borderline personality disorder might limit her ability to tolerate criticism, interpersonal demands, and stress in the workplace. Id. at 500. She further opined, however, that Pacensa's symptoms appeared to be improving with medication and therapy. Id. Finally, Tracy noted that Pacensa retained the capacity to concentrate and persist at simple to average tasks for two-hour periods during an eight-hour workday at an acceptable pace in unpressured settings; relate adequately in settings with minimal supervision and decreased need for interaction with coworkers and the general public; and adapt to modest changes in work routine. Id.

On July 1, 2009, Maliszewski completed a mental residual functional capacity assessment and a Psychiatric Review Technique Form based on the record evidence. Id. at 590-607. Maliszewski also diagnosed Pacensa with depression and borderline personality disorder. Id. at 593, 597. He concluded that Pacensa was mildly limited in activities of daily living and moderately limited in maintaining social functioning and in maintaining concentration, persistence, or pace. Id. at 600. Maliszewski further opined that Pacensa was not significantly limited in understanding and memory and was moderately limited in areas of sustaining concentration and persistence; social interaction; and

8

adaptation.  Id. at 604-05.  According to Maliszewski, Pacensa
was capable of recalling simple tasks and had intact attention
that was sufficient to perform simple tasks.  Id. at 606.
Therefore, Maliszewski concluded that although Pacensa had
enduring social difficulties that caused her to perform better in
a more independent job role, she was capable of performing
concrete tasks in a normal, structured work setting.  Id.  In its
review affirming the hearing officer's decision, the Board placed
"significant weight" on Maliszewski's opinion.  Id. at 1.

## II.  LEGAL STANDARD

### A.  Standard of Review

Under 42 U.S.C. § 405(g), a district court has the power to
affirm, modify, or reverse a decision of the Commissioner.  The
district court must make its decision based on the pleadings and
transcript of the record before the Commissioner; "[t]he findings
of the Commissioner of Social Security as to any fact, if
supported by substantial evidence, shall be conclusive."  42
U.S.C. § 405(g); accord Manso-Pizarro v. Secretary of Health &
Human Servs., 76 F.3d 15, 16 (1st Cir. 1996).  The First Circuit
has clarified this standard as requiring a court to uphold the
Commissioner's findings if "a reasonable mind, reviewing the
evidence in the record as a whole, could accept it as adequate to
support his conclusion."  Irlanda Ortiz v. Secretary of Health &
Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting

9

Rodriguez v. Secretary of Health & Human Servs., 647 F.2d 218,
222 (1st Cir. 1981)).  As it is the role of the Commissioner to
draw factual inferences, make credibility determinations, and
resolve conflicts in the evidence, the Court must not perform
such tasks in reviewing the record.  Id.  Complainants face a
difficult battle in challenging the Commissioner's determination
because, under the substantial evidence standard, a court must
uphold the Commissioner's determination, "even if the record
arguably could justify a different conclusion, so long as it is
supported by substantial evidence."  Rodriquez Pagan v. Secretary
of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

**B.    Social Security Disability Standard**

An individual is considered disabled if he is unable "to
engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can be
expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12
months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration has promulgated a
five-step sequential analysis to determine whether a claimant is
disabled.  See 20 C.F.R. § 404.1520.  The hearing officer must
determine: (1) whether the claimant is engaged in substantial
gainful activity; (2) whether the claimant has a severe
impairment; (3) whether the impairment meets or medically equals

10

an impairment listed under 20 C.F.R. Part 404, Subpart P,
Appendix 1, and meets the duration requirement; (4) whether the
claimant has the residual functional capacity to perform her past
relevant work; and (5) whether the impairment prevents the
claimant from doing any other work considering the claimant's
age, education, and work experience.  Id.

The claimant bears the burden in the first four steps to
show that she is disabled within the meaning of the Social
Security Act.  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir.
2001); Goodermote v. Secretary of Health & Human Servs., 690 F.2d
5, 7 (1st Cir. 1982).  Once the claimant has established that she
is unable to return to her former employment, the burden shifts
to the Commissioner to show, at the fifth step, that the claimant
is able to engage in substantial gainful activity that exists in
significant numbers in the national economy.  Freeman, 274 F.3d
at 608.

**III. THE COMMISSIONER'S DECISION**

After applying the five-step sequential evaluation, the
hearing officer held that Pacensa was not disabled.  Admin. R.
11-16.  First, the hearing officer found that although Pacensa
had worked after the alleged onset date, Pacensa's activities did
not rise to the level of substantial gainful activity.  Id. at
11.  Second, the hearing officer concluded that Pacensa suffered
from a severe impairment: borderline personality disorder.  Id.

at 11.  Additionally, the hearing officer found that Pacensa suffered from a non-severe impairment, hypothyroidism.  Id. at 12.  The Board, however, correctly noted that Pacensa also suffered from depression, a severe impairment.  Id. at 1.  Third, the hearing officer found that none of Pacensa's impairments met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 12-13.  Fourth, the hearing officer held that Pacensa retained the residual functional capacity to perform a full range of work at all exertional levels, except that she is limited to work in a non-stressful environment where she need not continuously deal with the public.  Id. at 13.  Although the hearing officer did not address depression at all in the discussion of Pacensa's residual functional capacity, the Board found that the hearing officer's assessment "accommodate[d] limitations that arise from depression."  Id.

Finally, at the fifth step, the hearing officer determined that Pacensa was unable to perform any past relevant work, but retained the residual functional capacity to perform work that exists in significant numbers in the national economy.  Id. at 15-16.  The hearing officer relied on the Medical-Vocational Guidelines ("the Grids"), 20 C.F.R. Part 404, Subpart P, App. 2, to support the finding that jobs existed in the national economy that Pacensa retained the capacity to perform.  Admin R. 16.  One

purpose of the Grids is to "streamline adjudication" and enable the Secretary to satisfy his burden of proving the availability of jobs in the national economy without resorting to the testimony of vocational experts. <u>Sherwin</u> v. <u>Secretary of Health & Human Servs.</u>, 685 F.2d 1, 4 (1st Cir. 1982). The hearing officer noted that Pacensa's "ability to perform work at all exertional levels has been compromised by nonexertional limitations" but concluded that those "limitations have little or no effect on the occupational base of unskilled work."[1] Admin. R. at 16. Accordingly, the hearing officer determined that Pacensa was not disabled. <u>Id.</u>

## IV. ANALYSIS

Pacensa challenges the hearing officer's disability finding on two grounds. Pacensa Mem. 11. First, Pacensa claims that the hearing officer's determination of her residual functional capacity at the fourth step of the sequential disability analysis was not supported by substantial evidence. <u>Id.</u> at 12. Specifically, Pacensa challenges the finding that her only

---

[1] The Social Security Administration defines unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568. "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15.

nonexertional[2] limitation is that she must work in a non-stressful environment where she does not have to deal continuously with the public.  Id.  Second, Pacensa alleges that the hearing officer erred in relying on the Grids to establish that she could perform other work existing in significant numbers in the national economy.  Id. at 14.

### A.    Residual Functional Capacity

The hearing officer concluded that Pacensa retained the capacity to perform a full range of work at all exertional levels, except that she is limited to work in a non-stressful environment where she does not have to continuously deal with the public.  Admin. R. 15.  A plaintiff bears the burden of providing evidence establishing the degree to which her impairments limit her residual functional capacity.  See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The hearing officer, however, determined that the record evidence did not support Pacensa's claims regarding the intensity, persistence, and limiting effects of her impairment.  Admin. R. 15.  As it is the role of the

---

[2] An exertional limitation is one that affects an individual's "ability to meet the strength demands of jobs," meaning one's ability to sit, stand, walk, lift, carry, push, and pull.  20 C.F.R. § 404.1569a(b).  Nonexertional limitations are ones that affect an individual's ability to meet other demands of jobs.  Id. § 404.1569a(c).  They include, but are not limited to, "difficulty functioning" due to nervousness, anxiety or depression, "difficulty maintaining attention or concentrating," and "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching."  Id. § 404.1569a(c).

Commissioner to draw factual inferences, make credibility determinations, and resolve conflicts in the evidence, the Court must not perform such tasks in reviewing the record. Irlanda Ortiz, 955 F.2d at 769. This Court reviews the hearing officer's decision to determine whether there is substantial evidence in the record to support it. Id.

The hearing officer considered the extent to which Pacensa's borderline personality disorder symptoms were consistent with the findings of treating and non-examining physicians. Admin R. 13-15. The hearing officer concluded that while Pacensa's borderline personality disorder reasonably could be expected to produce the claimed symptoms, Pacensa's severity claims were not credible in light of the other record evidence. Id. at 15; see Irlanda Ortiz, 955 F.2d at 769 ("It is the responsibility of the [hearing officer] to determine issues of credibility and to draw inferences from the record evidence."). Pacensa reported that she was unable to maintain proper social or workplace relationships. Admin. R. 166-68. Yet the hearing officer noted that Pacensa regularly interacts with family members and chats online. Id. at 12, 165. Moreover, the hearing officer reviewed Pacensa's long history of emotional difficulties, including her diagnoses for anxiety, depression, bipolar disorder, and borderline personality disorder. Id. at 14. The hearing officer, however, omitted Callahan's diagnosis of Intermittent

Explosive Disorder.  See id. at 14, 801.  Pacensa's treating and examining physicians have consistently estimated her GAF between 51 and 59, consistent with moderate difficulty in social or occupational functioning.  Admin R. 225, 237, 307, 328, 775.

The hearing officer found that Pacensa has trouble with social interaction and a history of explosive outbursts.  Id. at 14.  During the hearing, he suggested that Pacensa needed a job that did not require interaction with the general public.  Id. at 44.  Moreover, Pacensa's treating physicians have concluded that her impairments are emotional in nature.  Id. at 14, 801.  Indeed, Callahan concluded that as Pacensa is "vigilant for any sense of rejection" and can be "very reactive" in response to slights, these "emotional factors . . . make it hard for her to sustain stability and consistency over time."  Id. at 801.  In addition, the Board placed significant weight on Maliszewski's opinion.  Id. at 1.  Maliszewski concluded that Pacensa had enduring social difficulties that caused her to perform better in a more independent job role, but noted that she was capable of performing concrete tasks in a normal, structured work setting.  Id. at 606.  Therefore, the hearing officer reasonably concluded that Pacensa was limited to non-stressful work that does not involve continuous contact with the public.  Id. at 15.

Furthermore, although Pacensa alleges that she has not worked since October 2008, the hearing officer noted that, in

November 2009 and January 2010, Pacensa told her treating physicians that she worked cleaning houses.  Id. at 15, 753. Similarly, Pacensa testified that pain in her toes made it difficult to stand or to walk, id. at 15, 37-38, but reported that she regularly performed household chores and could walk for long periods without rest, id. at 163-65.  The hearing officer thus concluded that Pacensa's statements regarding the limiting effects of her toe pain were not supported by objective medical evidence.  Id. at 14, 15, 753-58.  Finally, the hearing officer emphasized that the recommended course of treatment (i.e., physical therapy and a follow-up appointment) did not indicate a level of concern consistent with Pacensa's severity claims.  Id. 15, 759.

Based on the entire record, the hearing officer reasonably found that Pacensa's claims regarding the degree of her impairments were not fully consistent with her other testimony or with the medical assessments of treating and non-examining physicians.  Therefore, his residual functional capacity findings were supported by substantial evidence.

**B.   Reliance on Medical-Vocational Guidelines**

If a claimant has a severe medically determinable impairment which, though not meeting or medically equaling the criteria in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App. 1, prevents a claimant from performing past relevant work, the

hearing officer must determine whether the claimant can do other work.  See id. § 404.1520(e),(g).  In appropriate cases, the Grids allow the Commissioner to satisfy this burden without resorting to "the live testimony of vocational experts." Sherwin, 685 F.2d at 4; see Ortiz v. Secretary of Health and Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (noting that the Grids are designed to permit the Commissioner to prove the existence of other jobs in the national economy that a claimant can perform without relying on a vocational expert).  The Grids include combinations of the four statutory factors essential to the disability finding, namely physical ability, age, education, and work experience.  See 20 C.F.R. Part 404, Subpart P, App. 2. For each combination of factors, the Grids state conclusively whether a claimant with those characteristics is "disabled" or "not disabled."  See id.

In Ortiz, the First Circuit observed that the Grids are "predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirement of jobs."  890 F.2d at 524 (quoting 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(e)).  Thus, the Grids primarily are designed to measure the effect of exertional impairments on the potential occupational base which remains available to a claimant.  Id.  Nonetheless, the Commissioner claims that use of the Grids to meet the government's burden at step five is

generally appropriate where nonexertional impairments do not

"significantly affect the range of work existing in the national

economy for individuals with . . . no medically determinable

impairment which limits exertion." SSR 85-15, at 2.[3]

There are widely varying approaches in the circuits on the

question of when a nonexertional limitation is sufficiently

significant to preclude application of the Grids.[4]  In the First

Circuit, the Commissioner may rely exclusively on the Grids as a

"framework" to satisfy his burden at step five even where a

nonexertional impairment is significant if it only reduces the

---

[3] Conversely, where a nonexertional impairment "significantly affects claimant's ability to perform the full range of jobs' he is otherwise exertionally capable of performing, 'the [Commissioner] must carry his burden of proving the availability of jobs in the national economy'" by relying on vocational experts.  Ortiz, 890 F.2d at 524 (citations omitted).

[4] For instance, the Eighth Circuit held in King v. Astrue, 564 F.3d 978, 979 (8th Cir. 2009), that reliance on the Grids was not appropriate where a claimant had a severe mental impairment and could not return to her past relevant work.  In a similar vein, the Fifth Circuit in Loza v. Apfel, 219 F.3d 378, 399 (5th Cir. 2000), rejected a hearing officer's determination that the claimant's mental impairment was not severe and noted that application of the Grids on remand would be appropriate only if the claimant's nonexertional mental impairment had a "slight" or "minimal" effect on his ability to work.  By contrast, the Ninth Circuit in Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007), held that a hearing officer's finding of a severe nonexertional impairment at step two of the sequential analysis did not preclude application of the Grids at step five.  Rather, the court concluded that some higher degree of severity is required before the Grids are inapplicable.  See id.  The court reasoned that the Grids are intended to produce greater uniformity in disability determinations and, therefore, their use is invalid only where the severity of a nonexertional impairment is not already accounted for in the Grids.  See id. (citing Heckler v. Campbell, 462 U.S. 458, 461 (1983)).

occupational base "marginally."[5] <u>Ortiz</u> at 890 F.2d at 524. Yet

in <u>Ortiz</u>, where the First Circuit affirmed a hearing officer's

denial of benefits based upon the Grids, the court cautioned that

a hearing officer "typically should err on the side of taking

vocational evidence." <u>Id.</u> at 528.

In the present case, the hearing officer used the Grids to

establish that Pacensa could perform unskilled work existing in

significant numbers in the national economy. Admin. R. 16.

Accordingly, he entered a finding of not disabled. <u>Id.</u> Because

the hearing officer reached this determination without taking any

vocational testimony, he is deemed to have relied exclusively on

the Grids to show that jobs that claimant could perform existed

in the national economy. <u>See</u> <u>Ortiz</u>, 890 F.2d at 524 n.4.

Pacensa challenges the Commissioner's reliance on the Grids,

claiming that they may not be used to meet the Commissioner's

burden where nonexertional limitations significantly affect a

claimant's ability to engage in substantial gainful employment.

Pacensa Mem. 14 (citing <u>Ortiz</u>, 890 F.2d at 528).

Both parties rely on the First Circuit's decision in <u>Ortiz</u>,

890 F.2d 520. Def.'s Mem. Supp. Mot. Affirming Decision Comm'r

---

[5] "Despite what might be suggested by use of the word
'framework,' whenever [a hearing officer] fails to take vocational
testimony, he must be deemed '[i]n reality' to have 'relied
exclusively on the grid to show the existence of jobs claimant could
perform.'" <u>Ortiz</u>, 890 at 524 n.4 (quoting <u>Figueroa-Rodriguez</u> v.
<u>Secretary of Health and Human Servs.</u>, 845 F.2d 370, 372 (1st Cir.
1988)).

12-13, ECF No. 20; Pacensa Mem. 14. In _Ortiz_, the claimant suffered from two conditions defined by the Commissioner as nonexertional impairments: (1) a restricted ability to bend from the waist, and (2) chronic depression (or dysthymia). _Id._ at 525. The hearing officer in _Ortiz_ concluded that the claimant's chronic depression, though significant, merely affected the occupational skill level at which the claimant could perform. _Id._ at 526 & n.7. The hearing officer then relied on the Grids, which use skill level as one factor, to provide a framework for the disability inquiry at the fifth step. _Id._ at 526 (observing that "so long as a nonexertional impairment is justifiably found to be substantially consistent with the performance of the full range of unskilled work, the Grid retains its relevance"). In _Ortiz_, the court noted that with respect to mental impairments, the relevance of the Grids entails two separate determinations: (1) whether a claimant can perform close to the full range of unskilled work, and (2) whether she can conform to the demands of a work setting, regardless of the skill level involved. _Id._ The court noted that this inquiry required a close consideration of the hearing officer's assessment of residual functional capacity. _See id._

In the present case, the hearing officer found that Pacensa's borderline personality disorder was a severe impairment that compromised her ability to perform at all exertional levels.

Admin. R. 16.  The hearing officer erroneously concluded that
Pacensa's depression was non-severe, but upon correcting this
error, the Board concluded that Pacensa's residual functional
capacity did not change with the addition of depression.  <u>Id.</u> at
1.  The hearing officer further concluded, however, that
Pacensa's nonexertional limitation had little to no effect on her
ability to perform remunerative unskilled work so long as she
does not have to deal continuously with the public.  <u>See</u> <u>id.</u> at
15-16.  The hearing officer credited the medical assessments of
Callahan, who observed that Pacensa needed to develop better
coping skills, and of Mitnik, who conducted a consultative
examination of Pacensa in 1990, when she was eleven years old.
<u>Id.</u> at 14-15.  In his 1990 consultation, Mitnik concluded that
Pacensa's limitations at school "appear emotional in nature."
<u>Id.</u> at 632.  The hearing officer put seemingly excessive weight
on Mitnik's opinion concluding that "doctors have opined that the
claimant's impairments are 'emotional in nature.'"  <u>Id.</u> at 15
(citing <u>id.</u> at 632).  While a hearing officer's conclusion that a
specific nonexertional restriction does not "significantly erode
the occupational base of unskilled light work" can be supported
without vocational expert testimony, <u>Hannan</u> v. <u>Astrue</u>, No. 08-
11480-PBS, 2009 WL 2853578, at *10 (D. Mass. Sept. 3, 2009)
(Saris. J.), the testimony of a vocational expert is usually
required, <u>id.</u> at *9; <u>accord</u> <u>Heggarty</u> v. <u>Sullivan</u>, 947 F.2d 990,

996 (1st Cir. 1991) (remanding where Commissioner failed to carry his burden at step five, and had used the Grids in spite of nonexertional limitations); Miranda-Monserrate v. Barnhart, 520 F. Supp. 2d 318, 324 n.4 (D.P.R. 2007) (noting that "the First Circuit Court's most recent decisions (not selected for publication) lean heavily towards the use of a vocational expert in all but the most clear-cut cases"). At this final step of the analysis, the Commissioner bears the burden of proof as to whether jobs exist for the claimant. Goodermote, 690 F.2d at 7.

Here, where the hearing officer concluded summarily that the nonexertional limitations had "little or no effect" on Pacensa's ability to work, the Commissioner has not carried his burden. Admin. R. 15. The hearing officer failed to address whether Pacensa could respond to the demands of the work setting. To meet this burden, the hearing officer must establish that the claimant can "cope with the demands of any work environment," including "the need to be punctual and to attend work on a regular basis, the ability to accept supervision and the capacity to remain in the work place for an entire day." Irlanda Ortiz, 955 F.2d at 770 (citing SSR 85-15). Tracy, a non-examining consulting physician, concluded that Pacensa's borderline personality disorder might limit her ability to tolerate criticism, interpersonal demands, and stress in the workplace. Admin. R. at 500. Tracy also found that Pacensa had a markedly

limited ability to interact appropriately with the general public and could only persist with basic tasks for two-hour periods during an eight-hour workday. Id. at 499-500. Callahan noted that Pacensa had difficulty getting along with others and a "marginal" response to routine stress. Id. at 579. There is a lack of substantial evidence in the record here demonstrating that these limitations no more than marginally reduce the occupational base for unskilled work available to Pacensa. See Ortiz, 890 F.2d at 525; see also Roman-Roman v. Commissioner of Social Security, 114 Fed. App'x. 410, 412 (1st Cir. 2004) ("This does not show that [claimant] is disabled, but unless this gap is closed, it does preclude reliance upon the [Grids].").

Therefore, the hearing officer's general finding that Pacensa's borderline personality disorder does not reduce the occupational base of unskilled work is unsupported by substantial evidence. Accordingly, the hearing officer's denial of benefits based solely on the Grids was not appropriate. See Roman-Roman, 114 Fed. App'x. at 412 (remanding for incorrect use of the Grids with nonexertional limitations where medical evidence suggested claimant was moderately functional or completely dysfunctional); Ortiz, 890 F.2d at 527 (noting that hearing officers "should err on the side of taking vocational evidence" when a significant nonexertional limitation is present in order to avoid "needless agency rehearings"); Miranda-Monserrate, 520 F. Supp. 2d at 332

(urging that "evidentiary support for that decision be enumerated more clearly and in greater detail than was done here in order to avoid needless remands for subsidiary fact-finding").

## V.  CONCLUSION

For all these reasons, this Court DENIES Pacensa's motion for an order reversing the decision of the Commissioner, ECF No. 15, and DENIES the Commissioner's motion to affirm the hearing officer's decision, ECF No. 19.  Pursuant to 42 U.S.C. § 405(g), this matter is hereby remanded for good cause to the agency for further proceedings consistent with this opinion.

SO ORDERED.

<u>/s/ William G. Young</u>
WILLIAM G. YOUNG
DISTRICT JUDGE